# THE SUPREME COURT

OF

# PENNSYLVANIA.

WESTERN DISTRICT—PITTSBURGH, 1853.

22  9
161 448
22  9
e 26 SC ²216

## Foster *versus* Gray.

1.  A., having an equitable title to a lot of ground, agreed to sell it to G., it being stipulated that the purchase-money was to be paid either to the owner of the legal title, or to A. himself. At the time of this·sale, a judgment existed against A. On a precipe, in 1821, for a *fi. fa.* on this judgment, was written an agreement by counsel that the administrators of A. be substituted. The lot was levied on and sold at sheriff's sale, and purchased by G. The writ was returned sold to G., but in a subsequent return, it was stated that G. "refusing to pay, therefore unsold for want of bidders." A deed, however, was subsequently made by the sheriff to G., acknowledging the receipt of the amount of the bid as the consideration of the deed, but without a separate receipt on the deed for the same. Afterwards an ejectment was brought by the owner *of the legal title* against the purchaser and the said administrators, and a conditional verdict was rendered for the plaintiff, to be released on payment of the amount; when a release was to be executed by the devisee of the legal title. The amount of the verdict, exceeding the amount of the bid at the sheriff's sale, was paid by G. and the release obtained:

It was *Held*, that after the lapse of nearly *thirty years* from the sale, it was too late for the heirs of A. to object that the administrators had not been formally substituted through a *scire facias*.

2.  Though the sheriff after returning a sale, returned the property unsold on account of refusal to pay: *Held*, that his deed to the purchaser acknowledged within less than a year afterwards, stating the payment of the consideration, being the amount of the bid, but not having a separate receipt for the amount of the same, was *primâ facie* evidence of the payment of the purchase-money and of a valid title to the lot.

3.  The Act of 14th March, 1846, permitting certified copies of sheriffs' deeds previously recorded to be given in evidence in all cases where the original deeds would be evidence, is *constitutional*.

[*Foster v.* Gray.]

4. An ejectment by the heirs of A., the former owner of the equitable title, having been brought against G., the purchaser, nearly thirty years after the sheriff's sale, and more than *twenty* years after the conditional verdict, and above nineteen years after the release of the legal title, it was *held* that the plaintiffs were not entitled to recover.

5. Evidence that the widow of the owner of the equitable title, urged her attorney to collect the purchase-money from the purchaser of the property, but that it was neglected, was not evidence in the case.

ERROR to the District Court of *Allegheny county*.

This was an ejectment by Samuel Foster and wife and others *v.* James Gray, for a lot of ground in Bayardstown, Allegheny county; extending from Penn street to the Allegheny river, adjoining M'Kelvy and others, containing about two acres.

The plaintiffs claimed as heirs of John McGregory.

It appeared that John McGregory, at one time, had *an equitable title* to the premises, he having entered into an article of agreement with *George Wallace*, the former owner, for the purchase of the property. Whilst thus holding the equitable title, the purchase-money being unpaid, a judgment was confessed by McGregory and others in favor of William Moreland—viz: on the 16th January, 1813, for $2000. *Sci. fa.* to April T., 1815. On 15th April, 1815, judgment, which, on 26th May, 1815, was liquidated by the Prothonotary, according to agreement of attorneys, at $3003.13.

Articles of agreement, dated 28th July, 1815, were executed by McGregory, in which he stated that he had sold to James Gray, 260 feet deep on the river end of his lots, &c., &c., and that he had given Gray possession of the same; and it proceeded, "he is to pay me, *or George Wallace*, at the rate of $1000 per acre for what are contained within the said boundary of 123 by 260 feet," and it was declared that the deed was to be made as soon as he was prepared; at which time the money was to be paid to said Wallace or him. Signed JOHN MCGREGORY. [L. s.]

On this agreement was a receipt on 23d *August, 1815,* for $30.

On the judgment of Moreland *v.* McGregory and others, a *precipe* for a *fi. fa.* was dated 28th May, 1821. On this *precipe* was entered, It is agreed that James Kelly and Margaret McGregory, administrators of John McGregory, be substituted. It was signed by counsel.

The *fi. fa.* was issued, and under it the premises in question were levied on and they were condemned,—the valuation being made at $1000.

A *vend. exp.* issued to November T., 1821, which was returned "Nov. 23, sold to James Gray for $1001." Signed by the sheriff. It was added: Gray refusing to pay, therefore unsold for want of bidders. Signed by the sheriff, but without date.

[Foster *v.* Gray.]

On part of the defendant, was then offered the record of a deed for the premises, by the sheriff to James Gray, the said purchaser. It was recorded in the recorder's office, in Book L. 2. It was acknowledged on 7th Nov., 1822, in open court. This deed was objected to, 1. That there was no return to authorize the sheriff to make a deed; 2. That there was no authority for recording a sheriff's deed at that time.

The consideration was stated in the deed to be $1001. There was no receipt on the deed for the purchase-money, and a blank was left in it for *the date*. The deed was admitted. This was the *first* bill of exceptions.

On the part of the defendant was then given in evidence, the record of an ejectment by George Wallace, the holder of the legal title, against James Gray, the administrator of McGregory's estate, and others. Afterwards, the executors of Wallace, the plaintiff, were substituted. On 11th April, 1831, verdict was rendered for plaintiffs—to be released on payment of $1330.84 and costs; one-half in thirty days, the other half in one year; and when paid Jane Wallace, the devisee, to execute a release to James Gray, without personal responsibility. 22d April, 1831, judgment.

On 6th April, 1832, satisfaction entered by plaintiff's attorney, release delivered. In the release was recited that Wallace had conveyed to the heirs of McGregory in 1821—the ejectment *vs.* Gray and others, and the payment by Gray of the $1330 in pursuance of the verdict.

The administration bond, dated 23d Nov., 1815, on the estate of McGregory, was given in evidence. No inventory of the estate was filed, and no administration account upon it.

It was testified that McGregory was to pay Wallace $500 per acre—that he first purchased 90 feet in front, and afterwards 30 feet more.

On the part of *defendants*, it was offered to prove that Mrs. McGregory frequently urged her attorney to collect the money from Gray, but that he did not attend to the matter. Rejected, on the ground that Gray was not bound, by the terms of his agreement with McGregory, to pay the money until he received the deed; and that he could not be affected by the transactions between Mrs. McGregory and her attorney. *Second bill.*

On the part of the plaintiffs, the Court were requested to charge the jury: 1. That the deed of the sheriff to Gray confers no title upon him. 2. That under the circumstances in evidence Gray was bound to prove actual payment of the purchase-money. 3. That Gray was a trustee for McGregory and his estate of the purchase-money under the article of agreement. 4. That he only bought the equitable right of McGregory at sheriff's sale, and the presumption is that if he paid any money on the sheriff's sale, it was

[Foster *v.* Gray.]

the money in his hands of McGregory's.    5. That under the evidence it is a question of fact for the jury, whether Gray is a trustee of McGregory and his estate.    6. That if Gray claims by possession, he must show a continuous, notorious, uninterrupted, and adverse possession.    7. The question whether Gray got the sheriff's deed fairly, and if it was delivered by Neville to him, is a question of fact for the jury.

HEPBURN, J., observed to the jury that on the part of the plaintiffs, it was alleged that the consideration of the deed never was paid; but he charged that the deed having been delivered by the sheriff, it passed the title of McGregory to the vendee, and the sheriff became liable to the judgment-creditor for the purchase-money.    That if the deed is contradicted by the record, the deed was to prevail, as it was the act of the sheriff, and rendered him liable for the money.    That the deed conveyed to Gray the equitable title of McGregory under the article of the latter with Wallace, and that Gray had a right to perfect that title.

He further charged that Gray did not become, by the purchase, a trustee for McGregory or his heirs.    The judgment on which the property was sold was not connected with the purchase-money due to Wallace, and Gray could not have paid off this judgment with the money due McGregory, in his hands, for the legal title was in Wallace, to whom the purchase-money from McGregory was yet due; and without paying both judgment and purchase-money, Gray could not have obtained a clear title even to his own portion of the lot.    But when Wallace brought ejectment to enforce the payment of his purchase-money, then Gray was compelled to pay him the money due to McGregory in his hands, and which, by the articles of agreement between them, he had a right to do; and it is very clear that the judgment against McGregory prevented Gray from paying his money at an earlier day, either to McGregory, the judgment-creditor, or Wallace.

By the deed from the sheriff, then, Gray became the owner of McGregory's equitable title in the remaining portion of the lot; and by release from the devisee of Wallace, the legal title was vested in him alone.    Thus his title to the entire property was perfected, and the defendants are entitled to your verdict.

There is nothing in the plaintiffs' points to defeat the defendants' title, and no more specific answer seems to be necessary.

To this charge plaintiffs' counsel excepted.

In the Act of 14th March, 1846, it is enacted: All patents granted by the Commonwealth, and all deeds of sheriffs, coroners, marshalls, and treasurers, and all deeds made in pursuance of a decree of any Court, being duly acknowledged, may be recorded in the office for recording deeds in the county where the lands lie; and the records thereof, or duly certified copies thereof, shall be

[Foster *v.* Gray.]

evidence in all cases where the original deeds or patents would be evidence; and where any of the deeds aforesaid have heretofore been recorded in the office for recording deeds in the county where the lands lie, or in the office of the prothonotaries of the several Courts of the city and county of Philadelphia, the records thereof or duly certified copies thereof, shall be as good evidence as if the same had been recorded under the provisions of this Act.

The assignments of error were: 1. To the rejection of the evidence stated in the first and second bills of exceptions; 2, 3, 4, 5, 6, 7, to the answer to the points; 8. In stating that the plaintiff was liable for the payment of the purchase-money bid by Gray; 9. In declaring that Gray's purchase was unconnected with the sheriff's sale, and that he could not pay the money he owed McGregory upon the sheriff's sale; 10. In saying that by the release from Wallace's devisee, Gray got the legal title; 11. In saying that the *defendants* were entitled to the verdict, thus taking the facts from the jury entirely. It was alleged that the plaintiffs were entitled to the purchase-money unpaid on the part of Gray, if to nothing else.

*Dunlop*, for the plaintiffs in error.—It was, *inter alia*, alleged that there was no legal substitution of the administrators. The substitution should be to *the action*. But there was no actual substitution, but only an agreement for substitution. The *heirs*, and not the administrators, should have been substituted. It was said that McGregory died in 1815, and that there was no judgment against *his estate*.

The record of a sheriff's deed in the recorder's office, was not evidence of the deed, as such deeds were not then within the recording acts: 1 *Dallas* 68; 6 *Watts* 298; 7 *W. & Ser.* 405; 16 *Ser. & R.* 297–299. It was contended that the record of the deed was not made evidence by the Act of 14th March, 1846, *Dunlop* 1061, because the record was a nullity—the original deed was not accounted for—the deeds recorded under it are to be duly acknowledged: 7 *W. & Ser.* 405; and the Act of Assembly as respects this record, is *retrospective*: 5 *W. & Ser.* 172–3, Norman *v.* Heist; 5 *Barr* 145; 6 *Id.* 87; 9 *Id.* 108; 10 *Id.* 326. The sheriff had no authority to make the deed, as he had returned the land unsold, and his return was not *amended*: 2 *Ser. & R.* 426; *Id.* 53.

*McConnell*, for defendant in error.—It was observed that it has been the practice in Allegheny county to record sheriffs' deeds in the recorder's office. The Act of 14th March, 1846, authorizing their recording, is not *unconstitutional*. It does not affect the title; it operates only on the remedy. Acts of that character have been usual. Act of 10th March, 1818, authorizing the secretary of the land office to exemplify letters of attorney, and making

B

[Foster *v.* Gray.]

the exemplifications evidence. Act of 5th April, 1849, as to records of deeds by commissioners. Act of 21st April, 1841, providing for the perpetuation of evidence as to the location of streets in Pittsburgh : 1 *Watts* 357, as to deeds of married women : 10 *Shepley* 553, Fales *v.* Wadsworth.

The validity of the sheriff's deed does not depend on *his return*, but on his writ. There is, in legal contemplation, no sale till deed made and delivered. It was intimated that the last return of "unsold for want of bidders," was after the acknowledgment and delivery of the deed to the purchaser. It was said that the acknowledgment *in the body of the deed* that Gray had paid the purchase-money, was sufficient, without a receipt for it : 7 *Cowen* 360. Here the possession of the deed and the property has been had by Gray for above 29 years, and the deed has been on record for above 26 years. Whether McGregory was dead or not when the judgment against him was rendered, his death was not suggested on the record ; and not having been so, he will be presumed in law to have been then alive : 4 *Watts* 370, Warder *v.* Tainter. Before the Act of 24th February, 1834, it was not necessary to make the heirs parties to the record : 13 *Ser. & R.* 147 ; 4 *Watts* 371, opinion of KENNEDY, J. ; *Id.* 367 ; 9 *Barr* 305.

Gray was not a trustee for McGregory's heirs. He was not bound to pay the purchase-money till he got his deed, and till tender of a deed he was not in default. If he paid the money to Wallace to get the title, he was exposed to the claims of judgment-creditors of McGregory ; and if he paid it to such creditors, he was exposed to the claims of Wallace or his heirs.

The opinion of the Court was delivered, September 15, by

LEWIS, J.—Where an injury is caused by an error in judicial proceedings, it is better that the loss should fall upon the parties whose negligence or acquiescence occasioned the wrong, than upon innocent third persons. It is therefore a rule in the administration of justice, that where a judgment is not absolutely void, a sale to a third person, in pursuance of it, cannot be defeated by any error or irregularity whatever. Errors and irregularities in the judgment, are not to be regarded in collateral proceedings. It has been held that a sale under a judgment against one who was dead at the time it was entered, vests in the purchaser a good title. If this be the rule where the representatives of the decedent have had no notice whatever of the proceedings, there can be no objection to its application to cases in which the proper representatives have had notice, and, by their attorney, have agreed upon the record to be substituted as parties. After the expiration of thirty years from the date of such agreement of substitution, it would seem to be against equity and law to permit the heirs of the decedent to object to the title of the sheriff's vendee on the ground that

[Foster v. Gray.]

a formal substitution of the administrators had not been made by means of a *scire facias*.

In Vastine *v.* Fury, 2 *Ser. & R.* 432, a sheriff's deed was held to be valid, notwithstanding that the return remained unaltered upon the record, setting forth that the purchaser had not paid the money, and therefore the land remained unsold. The sheriff's deed, duly acknowledged, reciting the sale and the receipt of the money, was deemed a sufficient amendment of the return. It is true that the sheriff had been directed to amend his return; but this was held to be no more than granting him leave to do so, because the Court had no power to compel him to alter his return in a matter of fact, and he had not in fact altered it, except by the act of executing the deed to the purchaser. The act of the Court in the case now before us, by which the acknowledgment of the deed was received and entered of record, and certified, was certainly equal to granting the sheriff permission to amend his return; and the deed thus acknowledged, with the sanction of the Court, was as effective, in amending the previous return, as that which was held to produce the same effect in Vastine *v.* Fury. The entry of the acknowledgment is presumed to have been made upon due notice to the parties interested, and the action of the Court has all the effect of a judicial decree. The sheriff's deed, thus acknowledged, was therefore *prima facie* evidence of the payment of the purchase-money and of a valid title to the land.

If James Gray, by the payment of the contract price, in discharge of encumbrances, could have obtained a good title, such as McGregory had contracted to convey to him, there might have been some reason for treating him as a trustee for McGregory. But this was impossible. The judgment in favor of Moreland upon McGregory's equitable interest was for a sum greater than Gray was to pay for his purchase. But independent of that judgment, McGregory's title was imperfect, because it was but a contract with Wallace for the land, upon which the purchase-money remained unpaid. So that if Gray paid the purchase-money due to Wallace, the land was still liable to sale under the judgment of Moreland against McGregory. If he paid the latter judgment, Wallace might recover the land in ejectment on his legal title. The only safety of Gray consisted in extinguishing both claims; and this could not be done without paying a large sum, more than the price agreed upon in his contract with McGregory. McGregory, whose duty it was to protect his vendee, and to discharge the encumbrances, disregarded his obligations to his creditors, as well as his contracts with Wallace and Gray. Under these circumstances, Gray had a right to purchase the equitable interest of McGregory, at sheriff's sale, under the judgment of Moreland; and this purchase entitled him, upon the recovery of a conditional

[Foster *v.* Gray.]

verdict for the land, by Wallace, to pay the purchase-money due to the latter, and to perfect his title by receiving a conveyance from his devisee.

The Act of 14th March, 1846, is constitutional.    In permitting certified copies of sheriffs' deeds, previously recorded, to be given in evidence, in all cases where the originals would be evidence, it neither divested a right nor impaired a contract.

This ejectment was brought in 1851; nearly thirty years after the sheriff's sale to James Gray, and twenty years after the conditional verdict in favor of Wallace.    After such inattention to the obligations of his contracts with Wallace and Gray, and such long-continued acquiescence in the judicial proceedings to transfer and extinguish his rights, we do not see how his claim could have been sustained by the Court below.    The objections to evidence were properly decided, and the instructions to the jury were as favorable to the plaintiffs in error as they had any right to demand.

Judgment affirmed.