J-A28027-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYIJAH MARSHALL | : | |
| | : | |
| Appellant | : | No. 2924 EDA 2022 |

Appeal from the Judgment of Sentence Entered October 4, 2022
In the Court of Common Pleas of Philadelphia County
Criminal Division at No: CP-51-CR-0008915-2021

BEFORE: OLSON, J., STABILE, J., and COLINS, J.[*]

MEMORANDUM BY STABILE, J.:              **FILED JUNE 14, 2024**

Appellant, Tyijah Marshall, appeals from the October 4, 2022 judgment of sentence imposing three and one half to seven years of incarceration for aggravated assault, simple assault, and possession of an instrument of crime.[1] We affirm.

The trial court recited the pertinent facts in its Pa.R.A.P. 1925(a) opinion:

> On September 20, 2020, complainant Tasha Hudson (hereinafter "Ms. Hudson") arrived at the home of Khaalilq Morris (hereinafter "Mr. Morris"), the father of her infant son. The parents made prior arrangements for a day out with their children. While the two were talking on the open porch Mr. Morris' current girlfriend, the Appellant (then about six (6) months pregnant with his child), exited the house and ushered Mr. Morris' children

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S.A. §§ 2702, 2701, and 907.

inside. Less than two (2) minutes later, Appellant returned outside with her "hands in her pocket." A heated exchange occurred between Appellant and Ms. Hudson, and Mr. Morris positioned himself between them. At that point, Appellant produced a pocketknife, lunged "under Mr. Morris' arm" and "stabbed Ms. Hudson in the stomach."

Ms. Hudson retreated towards her car. Appellant "followed her down the steps," and chased her "around her car with the knife until police arrived on the scene." Mr. Morris "tried to stop Appellant," and offering [sic] to transport Ms. Hudson to the hospital. Appellant threated to "stab him" if he drove her, stating "just let [her] die."

Police arrived and transported Ms. Hudson to Temple University Hospital, where she underwent a 5-6 hour emergency surgery. Ms. Hudson was left with a "scar that runs almost the entire length of her abdomen" approximately a quarter of an inch wide." Her recovery was physically and emotionally "draining," particularly considering the needs of her two (2) month old child. Ms. Hudson was also forced to accept new employment for less compensation to "avoid having to do too much labor."

Trial Court Opinion, 1/10/23, at 2-3 (record citations omitted).

The case proceeded to a one-day bench trial, at the conclusion of which the court found Appellant guilty of the aforementioned offenses. The trial court imposed sentence on October 4, 2022. Appellant filed a timely motion for reconsideration on October 14, 2022. The trial court denied that motion On October 21, 2022. Appellant filed this timely appeal on November 18, 2022.

Appellant presents two questions:

I.      Was the evidence insufficient for the trial court to convict [Appellant] of aggravate assault and related charges given that the Commonwealth failed to disprove [Appellant's] claim of self-defense beyond a reasonable doubt where the altercation took place at [Appellant's] home, [Appellant]

therefore had no duty to retreat, the complainant attacked [Appellant] while [Appellant] was five months pregnant, [Appellant] had an excellent reputation for being a peaceful, non-violent person, the complainant's testimony was so inconsistent and conclusory that it could not rebut [Appellant's] testimony, and the trial court erroneously found that Marshall had a duty to retreat?

II.     Was the verdict against the weight of the evidence where [Appellant] credibly testified that she acted in self-defense, [Appellant] was five months pregnant, [Appellant] had good character, she did not start the altercation, the altercation took place on her property outside of her home, and the trial court erroneously found that [Appellant] had a duty to retreat?

Appellant's Brief at 8.  We will review these issues in turn.

First, we consider Appellant's argument that the Commonwealth failed

to disprove her claim of self-defense beyond a reasonable doubt.

A claim of self-defense requires evidence establishing the following three elements:

(a) that the defendant reasonably believed that [s]he was in imminent danger of death or serious bodily injury and that it was necessary to use deadly force against the victim to prevent such harm; (b) that the defendant was free from fault in provoking the difficulty which culminated in the slaying; and (c) that the defendant did not violate any duty to retreat.  Although the defendant has no burden to prove self-defense, ... before the defense is properly in issue, there must be some evidence, from whatever source, to justify such a finding.  Once the question is properly raised, the burden is upon the Commonwealth to prove beyond a reasonable doubt that the defendant was not acting in self-defense.  The Commonwealth sustains that burden of negation if it proves any of the following: that the slayer was not free from fault in provoking or continuing the difficulty which resulted in the slaying; that the slayer did not reasonably believe that he was in imminent danger of death or great bodily harm, and that it was necessary to kill in order to save himself therefrom; or that the slayer violated a duty to retreat or avoid the danger.

- 3 -

*Commonwealth v. Williams*, 176 A.3d 298, 309 (Pa. Super. 2017) (internal citations and quotation marks omitted), *appeal denied*, 187 A.3d 908 (Pa. 2018).

The Commonwealth does not dispute that Appellant properly placed self-defense in issue. Appellant argues that the trial court erred in finding at the conclusion of trial that Appellant violated the duty to retreat. *See* N.T. Trial, 7/7/22, at 123-24. Appellant claims she had no such duty because the incident occurred at her home.

Appellant's argument relies on the castle doctrine which, in summary, "is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." *Commonwealth v. Childs*, 142 A.3d 823, 824 n.1 (Pa. 2016). We do not address the castle doctrine here because the outcome of this case does not turn on whether Appellant violated a duty to retreat. Instead, the trial court, in its Pa.R.A.P. 1925(a) opinion, and the Commonwealth, in its brief, argue that Appellant's self-defense theory fails because the evidence establishes beyond a reasonable doubt that Appellant was not free from fault in provoking the encounter between she and the victim. We agree.

The record, read in a light most favorable to the Commonwealth as verdict winner, reveals that on the day of the incident Tasha Hudson traveled to the home of Appellant and Khaliq Morris. Morris fathered children by both

- 4 -

women; Hudson was his previous girlfriend, and he was currently living with Appellant. N.T. Trial, 7/7/22, at 12-13. Hudson and Morris planned an outing with their child and Morris' other children. *Id.* at 15. As the victim was speaking to Morris and his children outside the home, Appellant came out and ushered Morris' children inside. *Id.* at 18-19. Hudson was surprised because Morris told her Appellant was traveling out of state. *Id.* at 14-15. After approximately two minutes, Appellant came back outside with her hands in her pockets. *Id.* at 23. Appellant produced a knife while Morris was standing between Appellant and Hudson. *Id.* at 27-28. Morris tried to take the knife from Hudson and push her back but "she went under him" and stabbed Hudson. *Id.* at 27. Hudson attempted to retreat to her car to drive herself to the hospital, but Appellant pursued her. *Id.* at 32-33. Morris offered to drive her, but Appellant told Morris she would stab him if he did so. *Id.* at 33. Appellant told Morris to let Hudson die. *Id.* Eventually police were summoned and drove Hudson to the hospital. *Id.* at 34-36. Hudson underwent emergency surgery and remained in the hospital three days. *Id.* at 37.

In summary, the record confirms that Appellant was not free from fault in provoking the incident. In fact, she attacked Hudson. Appellant's self-defense argument fails.

Next, Appellant claims the trial court's verdict violated the weight of the evidence. We conduct our review according to the following:

> The essence of appellate review for a weight claim appears to lie in ensuring that the trial court's decision has record support.

Where the record adequately supports the trial court, the trial court has acted within the limits of its discretion.

A motion for a new trial based on a claim that the verdict is against the weight of the evidence is addressed to the discretion of the trial court. A new trial should not be granted because of a mere conflict in the testimony or because the judge on the same facts would have arrived at a different conclusion. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice.

An appellate court's standard of review when presented with a weight of the evidence claim is distinct from the standard of review applied by the trial court. Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence.

*Commonwealth v. Windslowe*, 158 A.3d 698, 712 (Pa. Super. 2017),

*appeal denied*, 171 A.3d 1286 (Pa. 2017).

Appellant's weight of the evidence argument rests largely on the fact that the trial court stated at the conclusion of trial, before rendering a verdict, that what happened on the day of the incident was not clear. For context, we quote the pertinent portion of the transcript:

If that house was safe enough for the children, and you could have called your mother, you could have called the police, you could have stayed inside. I don't know—**I'm still not clear on what happened**. You fear for your children[2] enough to take them inside. You are carrying a child. And to protect that child inside of you, there's no reason for you to go back outside because you felt she shouldn't have been on your property.

---

[2] Appellant was pregnant with Morris' child at the time. The children Appellant escorted into the house were Morris' two children, Morris' two little brothers, and Appellant's own son. N.T. Trial, 7/7/22, at 73.

- 6 -

> Now, inside your house, you do what you go to do. You had an opportunity to retreat, and you did, with those children, but when you came back out, that says I'm coming back here because I got something for you. If you picked up that knife and stayed in the house, that's a different story.

N.T. Trial, 7/7/22, at 123 (emphasis added). Regardless of what the trial court meant saying, "I'm still not clear on what happened," the Commonwealth's evidence establishes, as the trial court explained in the passage quoted just above, that Appellant initiated an unprovoked attack on Hudson, and that she did not act in self-defense. This remark from the trial court does not, by itself, warrant a new trial.

Appellant argues, in addition, that Hudson threatened her on social media, vandalized Appellant's house, and brought two other women with her to help fight Appellant on the day of the incident. Accepting as true the evidence of Hudson's conduct on social media and her vandalization of Appellant's house, those facts do not justify Appellant's stabbing of Hudson, and therefore they do not support an argument that the verdict was against the weight of the evidence. The testimony regarding the actions of others who were present at the stabbing was in conflict. Hudson claimed one acquaintance happened by just before Appellant came out of the house with the knife, but that she was not involved in the altercation. Appellant claims she was assaulted by Hudson and two others and used the knife in self-defense. This conflicting testimony about who initiated the altercation required the trial court, sitting as factfinder, to make a credibility

determination. The court obviously believed Hudson. And, as is stated clearly in the applicable standard of review, a mere conflict in testimony does not justify a new trial. **Windslowe**, 158 A.3d at 712. Moreover, Appellant's testimony, even taken in tandem with Hudson's prior online threats, does not support a conclusion that the verdict was contrary to the weight of the evidence. Appellant and Hudson clearly disliked each other. On this occasion, however, Appellant escorted children into her home and away from Hudson before returning outside with a knife. After stabbing Hudson, she told Morris to let Hudson die, and threatened to stab Morris if he tried to drive Hudson to the hospital. On this record, we discern no abuse of discretion in the trial court's decision to deny Appellant's motion for a new trial based on the weight of the evidence.

Because we find no merit in either of Appellant's arguments, we affirm the judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Benjamin D. Kohler

Benjamin D. Kohler, Esq.
Prothonotary

Date: 6/14/2024