J-S17042-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| MICHAEL CHRISTOPHER ROMIG | : | |
| | : | |
| Appellant | : | No. 1168 MDA 2020 |

Appeal from the PCRA Order Entered August 21, 2020
In the Court of Common Pleas of Mifflin County Criminal Division at
No(s):  CP-44-CR-0000560-2016

BEFORE:  STABILE, J., KUNSELMAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.:                **FILED JUNE 25, 2021**

Michael Christopher Romig (Romig) appeals from the order of the Court of Common Pleas of Mifflin County (PCRA court) denying his petition filed under the Post-Conviction Relief Act (PCRA), 42 Pa.C.S. §§ 9541-9546.  After review, we affirm.

**I.**

This case arises from Romig's aggravated assault of James Barry Moore (Moore) on the evening of August 2, 2016.  The Commonwealth presented testimony, largely through Kelly McTavish, who was present during the assault at Romig's residence when Moore and another female went there to drink and socialize.  She testified that before the assault, Romig was in his living room

_____

[*] Retired Senior Judge assigned to the Superior Court.

with her and Moore. While sitting on a couch, she testified that Romig showed her naked pictures of himself that were on his cell phone. Moore told Romig that showing the pictures was inappropriate to which Romig responded by standing up and punching Moore in the face. Rather than fight back, she testified that Moore asked him to calm down. Romig left the room but soon returned and dragged Moore onto the floor where he repeatedly kicked him in the head and chest. Moore's face swelled and he began to bleed from his face and ears. She testified that she went upstairs to get the other female to help her stop Romig's assault. When they came downstairs, even though he was unconscious, Romig was still kicking Moore. Romig then got a knife and held it to Moore's neck. Romig said, "I'm just gonna end it now."

She testified that she and the other female were able to persuade Romig to let them take Moore to a hospital, where his condition was deemed sufficiently serious that he had to be life-flighted to another hospital for treatment. Moore testified that he could not remember the events of that night but is paralyzed from the chest down, has lost use of his hands and sexual organs and can no longer control his bladder or bowels. Moore now lives in a nursing home.

Testifying in his own defense, Romig gave a starkly different version casting Moore as the aggressor. He testified that Moore told him that he would beat him up if he "tried anything" with Kelly McTavish and asked Moore to leave because he did not like the way he was talking to him. As he walked

out of the living room, Moore grabbed and pushed him through a kitchen window, causing the glass to shatter and cut Romig's arm. Romig went on to testify that he was able to subdue him by punching him several times in the face and getting him on the floor. Moore, however, continued to attack him by throwing a television remote that struck him in the face, getting back up and continued the fight with him. Romig testified that he overcame him again and that when he was on the floor, kicked Moore twice in the ribs. Afraid that Moore would attack again, Romig testified that he retrieved a pocketknife for protection. By then, however, Moore was unconscious. He helped carry Moore to the car to go to the hospital and then went back inside his home, passed out on his couch, being awakened later that morning by the Pennsylvania State Police.

The trial court gave the jury a non-deadly force instruction under 18 Pa.C.S. § 505(a) but declined Romig's request for a castle-doctrine instruction which addresses use of deadly force against an intruder in a home under subsection (b)(2.1). The jury found Romig guilty of two counts of aggravated assault - one for causing serious bodily injury and the other for attempting to cause serious bodily injury with a deadly weapon.[1] The trial court imposed consecutive terms of imprisonment of 7 to 20 years and 2½ to 10 years, giving

---

[1] 18 Pa.C.S. §§ 2702(a)(1) and (a)(4). The jury also found Romig guilty of one count of simple assault, 18 Pa.C.S. § 2701(a)(1), which the trial court later merged with the other counts.

Romig an aggregate sentence of 9½ to 30 years' imprisonment. We affirmed on direct appeal and our Supreme Court denied further review. **Commonwealth v. Romig**, 400 MDA 2018 (Pa. Super. 2018) (unpublished memorandum), *appeal denied*, 215 A.3d 561 (Pa. 2019).

Romig filed this timely first PCRA petition and was appointed counsel. In an amended petition, Romig raised several claims of ineffective assistance of counsel against trial and direct appellate counsel, both of whom testified at an evidentiary hearing. After the hearing, the PCRA court denied Romig's petition and this timely appealed followed.[2]

**II.**

On appeal, Romig raises several claims alleging that he received ineffective assistance of counsel at both his trial and on direct appeal. We have explained that:

> In order to obtain relief under the PCRA premised upon a claim that counsel was ineffective, a petitioner must establish beyond a preponderance of the evidence that counsel's ineffectiveness so undermined the truth-determining process that no reliable adjudication of guilt or innocence could have taken place. When considering such a claim, courts presume that counsel was effective, and place upon the appellant the burden of proving otherwise. Counsel cannot be found ineffective for failure to assert a baseless claim.

---

[2] Our standard of review for the denial of a PCRA petition "calls for us to determine whether the ruling of the PCRA court is supported by the record and free of legal error. The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." **Commonwealth v. Lewis**, 63 A.3d 1274, 1278 (Pa. Super. 2013).

To succeed on a claim that counsel was ineffective, Appellant must demonstrate that: (1) the claim is of arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) counsel's ineffectiveness prejudiced him.

***Commonwealth v. Michaud***, 70 A.3d 862, 867 (Pa. Super. 2013) (quotation marks and citations omitted). "To demonstrate prejudice, a petitioner must show that there is a reasonable probability that, but for counsel's actions or inactions, the result of the proceeding would have been different." ***Commonwealth v. Mason***, 130 A.3d 601, 618 (Pa. 2015).

**A.**

Romig's first challenge centers on the trial court's denial of his request for a castle-doctrine instruction. We did not address the issue on direct appeal because appellate counsel failed to develop it in his brief and, though it sought to have the charge given that was denied, trial counsel failed to specifically object to the trial court's jury charge. As a result, Romig asserts that appellate counsel was ineffective. He then goes on to contend that he satisfied that element that his argument has merit and that he was prejudiced by this failure because the trial court erred in not giving the instruction because he testified that he defended himself against Moore after asking him to leave his home.

The castle-doctrine is codified under subsection (b)(2.1) of the self-defense statute and provides as follows:

**§ 505. Use of force in self-protection.**

* * *

**(b)** ***Limitations on justifying necessity for use of force.***

* * *

**(2.1)** Except as otherwise provided in paragraph (2.2), an actor is presumed to have a reasonable belief that deadly force is immediately necessary to protect himself against death, serious bodily injury, kidnapping or sexual intercourse compelled by force or threat if both of the following conditions exist:

**(i)** The person against whom the force is used is in the process of unlawfully and forcefully entering, or has unlawfully and forcefully entered and is present within, a dwelling, residence or occupied vehicle; or the person against whom the force is used is or is attempting to unlawfully and forcefully remove another against that other's will from the dwelling, residence or occupied vehicle.

**(ii)** The actor knows or has reason to believe that the unlawful and forceful entry or act is occurring or has occurred.

18 Pa.C.S. § 505 (b)(2.1).

The castle-doctrine "is an evidentiary means by which a defendant may attempt to prove justification by self-defense." *Commonwealth v. Cannavo*, 199 A.3d 1282, 1287 (Pa. Super. 2018). Specifically, it "is a specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." *Commonwealth v. Childs*, 142 A.3d 823, 824 n.1 (Pa. 2016) (citations omitted). However, there was no evidence that Moore unlawfully or forcefully entered his residence; instead, Moore and the two other females were invited into his home to drink and socialize.

Nonetheless, because he testified that he told Moore that he had to leave after he threatened him, Romig contends that the castle-doctrine can be

invoked if a guest is told to leave a residence but refuses to do so. This argument, however, is not supported by the plain language of subsection (b)(2.1)(i), which, as explained above, applies only to victims who unlawfully and forcefully enter a residence. Romig ignores this language, contending that it is "unreasonable" that he cannot invoke the doctrine because he invited Moore into home. *See* Romig's Brief at 8. In so arguing, however, Romig, not surprisingly, given its plain language, fails to cite any case law for support of his contention that subsection (b)(2.1)(i) can be satisfied if the defendant asked the victim to leave the residence. Accordingly, the trial court did not err in refusing to give the castle-doctrine charge because Romig could not establish the first requirement for the castle-doctrine: that the victim was in the process of unlawfully and forcefully entering or has unlawfully and forcefully entered and is present within his residence. *See* 18 Pa.C.S. § 505(b)(2.1)(i).

**B.**

Next, Romig alleges that trial counsel was ineffective for not objecting to Moore's testimony about his injuries. While he asserts that this evidence was "more prejudicial than probative," his main argument appears to be that Moore's testimony about his internal injuries and sexual organs required expert testimony.

We find there was nothing in Moore's testimony that exceeded the scope of permissible testimony as a fact witness. For its first count of aggravated

assault, the Commonwealth needed to prove that Romig caused Moore to suffer serious bodily injury. *See* 18 Pa.C.S. § 2702(a)(1). The Crimes Code defines serious bodily injury as "[b]odily injury which creates a substantial risk of death or which causes serious, permanent disfigurement, or protracted loss or impairment of the function of any bodily member or organ." 18 Pa.C.S. § 2301. The Commonwealth asked Moore about his current physical condition and ability to, among other things, control his bladder or bowels and what caused his condition. *See* N.T. at 126. Under Pennsylvania Rule of Evidence 701, a lay witness can testify to opinions or inferences that are rationally based on the perception of the witness. *See* Pa.R.E. 701. Here, Moore's testimony about his impairment caused by the assault was based on his perception and did not require expert medical testimony. As a result, trial counsel was not ineffective for not objecting to Moore's trial testimony about his injuries.

**C.**

Romig also contends that trial counsel was ineffective for failing to object to Moore's testimony during direct examination that he remembered waking up in a hospital and being told by medical personnel that he "was paralyzed from the chest down." N.T. at 124. He asserts that trial counsel should have known that "medical hearsay of this type is the worst type of information that a jury can hear." *See* Romig's Brief at 9.

First, Moore's testimony about what medical personnel told him was not necessarily hearsay. "Out of court statements are not inadmissible hearsay … if they are offered for some relevant purpose other than to prove the truth of the matter asserted." ***Commonwealth v. Wantz***, 84 A.3d 324, 326, 336 (Pa. Super. 2014) (citations omitted). Here, the evidence would have been admissible to prove what medical personnel told Moore when he woke up in the hospital. While Romig may dispute the cause of Moore's paralysis, there was no apparent dispute at trial whether Moore is now paralyzed.

Moreover, even if counsel should have objected, we fail to see how but for counsel's failure there is a reasonable probability that the result of the verdict would have been different. The central issue at trial was the extent to which Romig assaulted Moore and the credibility of his version of events. Romig, however, does not address the prejudice prong in his argument by failing to explain how the trial would have been different if the purported hearsay had been excluded.

## D.

Finally, Romig argues that trial counsel was ineffective for failing to highlight in his closing statement that the Commonwealth failed to offer expert medical testimony that Romig caused his injuries. He points to evidence that Moore fell off a horse at Romig's house earlier in the evening. Romig seems to believe that created a factual issue requiring the Commonwealth to offer

expert evidence excluding this fall from being the cause of Moore's injuries. **See** Romig's Brief at 9.

Romig's argument overstates the importance about Moore's fall from the horse because there was no evidence that it physically affected him and could be a plausible explanation for his injuries. Both female guests testified at trial that the fall was minor and that Moore was embarrassed but laughing about the fall. **See** N.T. at 85. In fact, Romig testified at trial that Moore was able to "get up on his own power" after the fall. **Id**. at 166. As a result, trial counsel did not feel that it was a meritorious argument worth pursuing with the jury because there was no evidence that the fall seriously injured Moore, as well as the evidence's relative weight when considered against the length and intensity of Romig's assault of Moore inside the residence. **See** N.T., 6/2/20, at 20-21. Trial counsel also had a strategic basis for not pursuing the argument with the jury, choosing instead to focus on more meritorious arguments regarding self-defense in his closing statement. Based on the testimony about the fall, Romig's counsel's decision not to highlight it in his closing argument was reasonable.

Order affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 6/25/2021