J-A08001-23

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| RACHEL M. PARKS | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| EZEKIEL KOCH | : | No. 1065 WDA 2022 |

Appeal from the Order Entered August 18, 2022
In the Court of Common Pleas of Blair County
Civil Division at No:  No. 2021 GN 287

BEFORE:   STABILE, J., SULLIVAN, J., and PELLEGRINI, J.[*]

MEMORANDUM BY STABILE, J.:                    **FILED: May 16, 2023**

Appellant, Rachel M. Parks ("Mother") appeals from the order entered on August 18, 2022, in the Blair County Court of Common Pleas, denying her request for relocation from Duncansville, Pennsylvania to Kingston, Tennessee, with her daughter, P.J.K. ("Child"), born in November 2018.  The order also, *inter alia*, maintained shared legal and shared physical custody between Mother and Appellee, Ezekiel Koch ("Father").  After careful review, we affirm.

The factual background and procedural history as set forth in this Court's Memorandum filed on February 8, 2022 is as follows.

> Mother and Father never married.  They are the natural parents of Child, born in November of 2018.  The parties resided together with Child in Hollidaysburg, Pennsylvania, until

---

[*] Retired Senior Judge assigned to the Superior Court.

approximately January of 2020, when the parties separated and Mother moved in with her family in Duncansville, Pennsylvania. After the parties' separation, Mother and Father began following an informal 3/4/4/3 rotating custody schedule, which allowed each party equal time with Child.

On February 4, 2021, Mother filed a complaint seeking sole legal custody and primary physical custody of Child, followed by a relocation petition on March 5, 2021, seeking permission to relocate with Child to Kingston, Tennessee. Father oppose[d] Mother's proposed relocation to Tennessee with Child.[1] A custody relocation hearing was held on April 28, 2021, during which both parties testified.

Following the hearing, the trial court issued an opinion, in which it set forth the following factual findings:

<u>MOTHER</u>

Mother is twenty-three years old and resides in Duncansville, Pennsylvania with the subject minor [C]hild along with Mother's father[, R.P. ("Maternal Grandfather")] and Mother's siblings.[2] Mother is employed full[-]time as an assistant manager at [a] retail store. [Child] attends the YMCA Early Learning Center when Mother is working. Although Mother has immediate family in Blair County, Mother is seeking to relocate with [Child] to Kingston, Tennessee, where she also has extended family. Mother testified that her father, along with her siblings[,] are also planning on relocating to Tennessee. Mother indicated she believes she can obtain employment at [a] store in Tennessee. Mother indicates she has taken her daughter to Tennessee several times and their lives will improve with the relocation. If the relocation is granted, Mother suggests Father could receive periods of custody with [Child], such as one long weekend

_____

[1] Mother contemporaneously filed a notice of proposed relocation on February 4, 2021. In response, Father filed a counter-affidavit objecting to the proposed relocation and a petition requesting a hearing on February 24, 2021.

[2] Mother's mother passed away in 2020. N.T., 4/28/21, at 11.

- 2 -

each month or in weekly increments over the summer.

## FATHER

Father is twenty-five years old and resides in Hollidaysburg, Pennsylvania, by himself and [with] his daughter when he has his periods of custody. Father works full[-]time as a mechanic [at a local car dealership], working 7:00 [a.m.] to 4:00 [p.m.] Father testified that he was first made aware that Mother was seeking to relocate to Tennessee with the parties' daughter in February 2021, after he received the relocation notice in the mail. Father was surprised by Mother's petition to relocate[] and was under the impression that the parties would continue to share an equal custody rotation with ... [C]hild. Father believes that his relationship with his daughter would diminish if Mother was granted permission to relocate with ... [C]hild to Tennessee. Father states that all of his family lives in Blair County, and [C]hild sees these family members on a regular basis. Father further states that he is financially stable in Blair County[] and[,] while Mother intends to relocate, her employment in Tennessee is speculative.

Trial Court Opinion [], 6/10/21, at 2-4 (unnecessary capitalization and citations to record omitted).

In conjunction with its opinion, the trial court issued an order awarding shared legal custody and shared physical custody of Child and denying Mother's petition for relocation. *See* Trial Court Order [], 6/10/21, at 2. The trial court directed that, as long as Mother chooses to remain in Blair County, Pennsylvania, the parties shall maintain an equal[] physical custody schedule. However, if Mother chooses to relocate without Child, she shall immediately notify the court so an appropriate schedule can be formulated. *Id.*

*R.M.P. v. E.K.*, 273 A.3d 1030 (Pa. Super. 2022) (unpublished memorandum at 1-2) (some brackets in original).

Thereafter, Mother filed a timely appeal. Pursuant to Mother's appeal, as the trial court failed to address the custody factors, this Court vacated the trial court's order and remanded for the trial court to "consider the custody factors in conjunction with the relocation factors and issue a new order addressing the parties' custody and relocation requests." *Id.* at 11-12.

Following remand, the trial court conducted a hearing ("remand hearing") on June 8, 2022. Mother and Father, represented by counsel, each testified on their own behalf. In addition, Mother presented the testimony of Maternal Grandfather. Father presented the testimony of his live-in girlfriend, B.P.[3]

At the time of the remand hearing, Mother still resided in her family home, owned by Maternal Grandfather, in Duncansville and worked as an assistant manager in a retail store in the local mall without the ability for advancement. N.T., 6/8/22, at 7, 11-12, 162. All of her immediate family had relocated to Tennessee. *Id.* at 4. Mother explained,

> [b]oth of [her parents] were from the Tennessee area and have relatives residing there. In fact, if Mother were permitted to

---

[3] The trial court "denied Father's request to limit and/or exclude testimony regarding relocation and directed the 'best interest of the child' standard allowed the [c]ourt to hear testimony that had occurred since the previous hearing." Trial Court Opinion, 8/18/22, at 2. The court explained, "The [c]ourt just simply agrees that it is standard -- it is always best interest and, in fact, if there has been some differences are any changes that have occurred, it would feel like it would be inappropriate to ignore them." N.T., 6/8/22, at 3.

relocate[,] she would live with her grandmother.[4] Mother indicate[d] . . . this home . . . would be provided to her in the event of [her] grandmother's death. . . . Mother testified that all of her family now lives in the Tennessee area and that her daughter is familiar with these family members but particularly those who previously lived in Blair County and have since moved to Tennessee. Those specific members were the immediate family members of Mother's, such as her sister and two brothers[,] as well as [Maternal Grandfather].[5]

Trial Court Opinion, 8/18/22, at 5-6. Maternal Grandfather testified that he would be selling the Pennsylvania family home. N.T., 6/8/22, at 163-64, 171.

As to her employment,

Mother . . . testified and submitted documentation that her job prospects in Tennessee would be better. She relie[d] on the fact there are multiple Manager positions in similar retail stores in Tennessee and that the promotion to Manager would allow her more flexibility and a greater income. . . .[6] Father . . . also . . . indicated that there are substantial jobs locally in Blair County that would allow for similar opportunities.

---

[4] Similar to the situation in Pennsylvania, this would be without payment of rent or utilities. *Id.* at 7, 10, 171.

[5] Mother testified to a strong bond between Child and her immediate family and indicated that Child "does ask for them quite often" now that they have moved. N.T., 6/8/22, at 5-7. Although Maternal Grandfather still traveled back and forth between Pennsylvania and Tennessee, he had changed his residency to Tennessee. *Id.* at 7, 55-56, 163-64.

[6] Mother presented an internet job search through Indeed showing managerial positions available in Tennessee for which she indicated she would be qualified and would receive a better salary, better benefits, and better flexibility. *Id.* at 14-21; *see also* Plaintiff's Exhibit 2, 6/8/22. Mother conceded portions of this job search document were duplicative. N.T., 6/8/22, at 59-50. While Mother testified that she applied for and was offered employment in Tennessee, she failed to disclose any specifics. *Id.* at 76. Again, without specifics, she also stated that there were "very, very few" similar type managerial positions available in Blair County. *Id.* at 96.

Trial Court Opinion, 8/18/22, at 5.

Father was still employed as a mechanic at a car dealership. N.T., 6/8/22, at 128-29. Since the prior hearing, he was additionally pursuing a lawncare business. *Id.* at 107-08, 129, 144. Father had recently moved from the home in Hollidaysburg, which he previously shared with Mother, to a home owned by his new girlfriend in Altoona, where he resided with his girlfriend and her five-year-old daughter.[7] *Id.* at 103-05. He indicated that their plan is to purchase a home in Hollidaysburg in the future. *Id.* at 106.

In its opinion subsequent to the hearing, the trial court set forth the following additional factual findings.

> Father has established a good foundation and relationship with his daughter[,] and, it is apparent that they have a close bond. Father testified that he has substantial family members in Blair County who have developed a relationship with his daughter. The [c]ourt finds that the family relationship of both families are positive for [C]hild.

Trial Court Opinion, 8/18/22, at 6-7.

By order dated August 17, 2022, and entered August 18, 2022, the trial court denied Mother's proposed relocation. The court further awarded the parties shared legal custody and shared physical custody. While not establishing a physical custody schedule, the court provided, "The parties shall

---

[7] Father testified, "It's a better house, more room for [C]hild to grow, do activities. The yard is a lot bigger with a lot more availability to put a swing set, a pool, a trampoline. . ., whatever you would like." N.T., 6/8/22, at 165.

- 6 -

continue to share custody on an equal basis." Order, 8/18/22, at ¶ 3. The court issued a contemporaneous opinion in which the court addressed and analyzed both the relocation and custody factors.

On September 15, 2022, Mother, through counsel, filed a timely notice of appeal, along with a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b).[8]

On appeal, Mother raises the following issues for our review:

I. Did the trial court err and/or abuse its discretion by entering an order denying Mother's petition for relocation when said order was contrary to the child's best interest and when the [c]ourt did not properly apply the custody relocation factors set forth in 23 Pa.C.S.A. § 5337(h), (1)-(10) and the custody factors set forth in 23 Pa.C.S.A. § 5328(a), (1)-(16)?

II. Did the trial court err and/or abuse its discretion in its analysis of the relocation factor set forth in 23 Pa.C.S.A. § 5337(h)(1) when it found this factor favors Father instead of Mother and by finding that Mother's family's move to Tennessee has a negative impact on this factor?

III. Did the trial court err and/or abuse its discretion when it found that the relocation factor set forth in 23 Pa.C.S.A. § 5337(h)(3) weighs against relocation by merely assessing the travel time to Mother's intended new residence and without considering Mother's testimony regarding suitable custody arrangements for Father?

IV. Did the trial court err and/or abuse its discretion by improperly applying the custody relocation factors set forth in 23 Pa.C.S.A. § 5337(h)(7)?

V. Did the trial court err and/or abuse its discretion by placing no weight on the relocation factor set forth in 23 Pa.C.S.A. § 5337(h)(7) when a proper analysis of the testimony, when applied

---

[8] By letter dated September 20, 2022, the trial court advised of its reliance on its prior opinion and order.

to this factor, should have resulted in this factor favoring Mother's request to relocate?

VI. Did the trial court err and/or abuse its discretion by setting forth and applying an improper legal burden on the Mother when it stated the following on page 5 of its Opinion and Order: "In all instances where a custodial parent seeks to relocate and a non-custodial parent opposes the move, the burden is on the custodial parent to establish a significant improvement in the quality of life for that parent and child."?

VII. Did the trial court err and/or abuse its discretion when it found that the custody factor set forth in 23 Pa.C.S.A. § 5328(a)(1) favors Father and against relocation and by finding that Mother placing the child on her health insurance through her employment had a negative impact on this factor?

VIII. Did the trial court err and/or abuse its discretion by finding that the custody factor set forth in 23 Pa.C.S.A. § 5328(a)(4) favors Father, instead of Mother?

IX. Did the trial court err and/or abuse its discretion by not finding that the custody factor set forth in 23 Pa.C.S.A. § 5328(a)(12) favors Mother?

Mother's Brief at 7-9 (unnecessary capitalization omitted; trial court answers omitted; internal citations cleaned up).

The relevant scope and standard of review for cases arising under the Child Custody Act ("the Act"), 23 Pa.C.S.A. §§ 5321-5340, is as follows:

In reviewing a custody order, our scope is of the broadest type and our standard is abuse of discretion. We must accept findings of the trial court that are supported by competent evidence of record, as our role does not include making independent factual determinations. In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand. However, we are not bound by the trial court's deductions or inferences from its factual findings. Ultimately, the test is whether the trial court's conclusions are unreasonable as shown by the evidence of record. We may reject the conclusions of the trial court only if they involve an error of law, or are unreasonable in light of the sustainable findings of the trial court.

- 8 -

*C.R.F. v. S.E.F.*, 45 A.3d 441, 443 (Pa. Super. 2012) (quoting *A.D. v. M.A.B.*, 989 A.2d 32, 35-36 (Pa. Super. 2010)); *see also E.R. v. J.N.B.*, 129 A.3d 521, 527 (Pa. Super. 2015) (citation omitted).

This Court has consistently held:

[t]he discretion that a trial court employs in custody matters should be accorded the utmost respect, given the special nature of the proceeding and the lasting impact the result will have on the lives of the parties concerned. Indeed, the knowledge gained by a trial court in observing witnesses in a custody proceeding cannot adequately be imparted to an appellate court by a printed record.

*Ketterer v. Seifert*, 902 A.2d 533, 540 (Pa. Super. 2006) (quoting *Jackson v. Beck*, 858 A.2d 1250, 1254 (Pa. Super. 2004)). In addition,

[a]lthough we are given a broad power of review, we are constrained by an abuse of discretion standard when evaluating the court's order. An abuse of discretion is not merely an error of judgment, but if the court's judgment is manifestly unreasonable as shown by the evidence of record, discretion is abused. An abuse of discretion is also made out where it appears from a review of the record that there is no evidence to support the court's findings or that there is a capricious disbelief of evidence.

*M.A.T. v. G.S.T.*, 989 A.2d 11, 18-19 (Pa. Super. 2010) (*en banc*) (citations omitted).

The paramount concern in any custody case decided under the Act is the best interests of the child. *See* 23 Pa.C.S.A. §§ 5328, 5338. "The best-interests standard, decided on a case-by-case basis, considers all factors that legitimately have an effect upon the child's physical, intellectual, moral, and spiritual wellbeing." *Saintz v. Rinker*, 902 A.2d 509, 512 (Pa. Super. 2006) (citation omitted). Section 5328(a) sets forth the best interest factors that

the trial court must consider in awarding custody. ***See E.D. v. M.P.***, 33 A.3d 73, 79-80 n.2 (Pa. Super. 2011). It provides as follows:

**§ 5328. Factors to consider when awarding custody**

**(a) Factors.**—In ordering any form of custody, the court shall determine the best interest of the child by considering all relevant factors, giving weighted consideration to those factors which affect the safety of the child, including the following:

(1) Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

(2) The present and past abuse committed by a party or member of the party's household, whether there is a continued risk of harm to the child or an abused party and which party can better provide adequate physical safeguards and supervision of the child.

(2.1) The information set forth in section 5329.1(a)(1) and (2) (relating to consideration of child abuse and involvement with protective services).

(3) The parental duties performed by each party on behalf of the child.

(4) The need for stability and continuity in the child's education, family life and community life.

(5) The availability of extended family.

(6) The child's sibling relationships.

(7) The well-reasoned preference of the child, based on the child's maturity and judgment.

(8) The attempts of a parent to turn the child against the other parent, except in cases of domestic violence where reasonable safety measures are necessary to protect the child from harm.

(9) Which party is more likely to maintain a loving, stable, consistent and nurturing relationship with the child adequate for the child's emotional needs.

(10) Which party is more likely to attend to the daily physical, emotional, developmental, educational and special needs of the child.

(11) The proximity of the residences of the parties.

(12) Each party's availability to care for the child or ability to make appropriate child-care arrangements.

(13) The level of conflict between the parties and the willingness and ability of the parties to cooperate with one another. A party's effort to protect a child from abuse by another party is not evidence of unwillingness or inability to cooperate with that party.

(14) The history of drug or alcohol abuse of a party or member of a party's household.

(15) The mental and physical condition of a party or member of a party's household.

(16) Any other relevant factor.

23 Pa.C.S.A. § 5328(a).

With respect to a request for relocation, the Act provides, "The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)." *Id.* at § 5337(i)(1). Furthermore, "Each party has the burden of establishing the integrity of that party's motives in either seeking the relocation or seeking to prevent the relocation." *Id.* at § 5337(i)(2).

Therefore, the trial court must also consider the following ten relocation factors set forth within Section 5337(h) of the Act:

**(h) Relocation factors.—**In determining whether to grant a proposed relocation, the court shall consider the following factors, giving weighted consideration to those factors which affect the safety of the child:

(1) The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the nonrelocating party, siblings and other significant persons in the child's life.

(2) The age, developmental stage, needs of the child and the likely impact the relocation will have on the child's physical, educational and emotional development, taking into consideration any special needs of the child.

(3) The feasibility of preserving the relationship between the nonrelocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

(4) The child's preference, taking into consideration the age and maturity of the child.

(5) Whether there is an established pattern of conduct of either party to promote or thwart the relationship of the child and the other party.

(6) Whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity.

(7) Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

(8) The reasons and motivation of each party for seeking or opposing the relocation.

(9) The present and past abuse committed by a party or member of the party's household and whether there is a continued risk of harm to the child or an abused party.

(10) Any other factor affecting the best interest of the child.

23 Pa.C.S.A. § 5337(h); *see also A.M.S. v. M.R.C.*, 70 A.3d 830, 836 (Pa. Super. 2013) (stating that, when making a decision on relocation that also involves a custody decision, "the trial court must consider all ten relocation factors and all sixteen custody factors" outlined in the Act.).

The trial court must consider all of the custody and relocation factors.

"**All** of the factors listed in [S]ection 5328(a) are required to be considered by the trial court when entering a custody order." *J.R.M. v. J.E.A.,* 33 A.3d 647, 652 (Pa. Super. 2011) (emphasis in original). Section 5337(h) requires courts to consider all relocation factors. *E.D., supra* at 81. The record must be clear on appeal that the trial court considered all the factors. *Id.*

*A.V. v. S.T.*, 87 A.3d 818, 822-23 (Pa. Super. 2014) (emphasis in original).

However, this Court has emphasized that the trial court, as the finder of fact, determines "which factors are most salient and critical in each particular case." *M.J.M. v. M.L.G.*, 63 A.3d 331, 339 (Pa. Super. 2013), *appeal denied*, 620 Pa. 710, 68 A.3d 909 (2013) (citing *A.D.*, 989 A.2d at 35-36)). Further, we have explained that Section 5323(d) of the Act "requires the trial court to set forth its mandatory assessment of the [. . .] factors prior to the deadline by which a litigant must file a notice of appeal." *A.V.*, 87 A.3d at 823 (citations omitted). This Court has stated:

In expressing the reasons for its decision, "there is no required amount of detail for the trial court's explanation; all that is required is that the enumerated factors are considered and that the custody decision is based on those considerations." *M.J.M.*[,

- 13 -

> 63 A.3d at 336]. A court's explanation of reasons for its decision, which adequately addresses the relevant factors, complies with Section 5323(d). ***Id.***

***Id.*** at 822-823.

Instantly, the trial court addressed and analyzed the custody factors pursuant to Section 5328(a) and the relocation factors pursuant to Section 5337(h). ***See*** Trial Court Opinion, 8/18/22, at 7-16. The court determined that Section 5337(h)(1), (3), and (4) favor Father and (6) favors Mother. The court found the remaining factors to be equal and/or neutral or not applicable. Further, the court found that Section 5328(a)(1), (4), and (11) favor Father, while (3) and (10) favor Mother. The court found the remaining factors to be equal and/or neutral or not applicable.[9] Most critical to the court were Section 5337(1), (2), and (7), as well as Section 5328(a)(1) and (4), under which it concluded that any perceived benefit to Mother from relocation, which would flow to Child, was outweighed by the stability of the current custodial arrangement. ***See id.*** at 17 ("[I]n consideration of all the factors . . . and the best interest consideration of [Child], the [c]ourt finds that the proposed relocation by Mother and the possible benefits which may attach do not outweigh the current stability which [Child] now enjoys with an equal apportionment of time between her parents.").

---

[9] While not directly stated therein, with its analysis, the trial court suggests that Section 5328(a)(11) is weighted in favor of Father and (12) and (13) are neutral.

With her first issue, Mother broadly alleges that the trial court's order is contrary to Child's best interests and that the court improperly applied both the custody and relocation factors. Mother's Brief at 41-47. Mother also notes that, prior to separation, she was Child's primary caretaker. *Id.* at 42. Mother indicates that she and Father had discussed relocation to Kingston, Tennessee prior to their separation, and acknowledged its benefits. *Id.* at 43. Mother states that, following separation, she and Child moved in with her immediate family and recognizes the close relationships and daily contact Child has had with her family. *Id.* While initially maintaining her role as Child's primary caretaker, Mother asserts that she "encouraged and permitted frequent and continuous contact between Father and [C]hild and promoted his relationship. . . by agreeing to gradually move to a 50/50 custody arrangement." *Id.* at 44. Mother indicates that her situation has not changed but for her family moving to Tennessee and her father needing to sell the home in Blair County. *Id.* at 44-45. She, however, emphasizes Father's alleged recent lack of stability, referencing his new living arrangements and supplemental employment. *Id.* at 45-46.

In her second through fifth and seventh through ninth issues, Mother then assails the court's findings as to Section 5337(h)(1), (3), (7), and (8) and Section 5328(a)(1), (4), and (12). *Id.* at 48-64, 66-77. As to these factors, the trial court stated:

*RELOCATION FACTORS 23 Pa.C.S.[] § 5337*:

- 15 -

1. The nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life.

As the parties have had an equal custody arrangement with their daughter, this is a very close factor as they both have a positive relationship with her. However, that close relationship with both families will change and has in fact already changed. Mother's family has chosen to relocate to Tennessee. That move has certainly impacted their relationship with the part[ies'] daughter. Mother's family has been gone for more than a year and their interaction has been reduced.

Meanwhile, Father's family's relationship, based on proximity, has remained constant. The [c]ourt found Father more credible than Mother in his testimony regard[ing] family contacts. The family living in the closer proximity will almost certainly have significantly more contact with [Child] than those living Boo miles greater distance.

[Child] is doing very well under the current situation residing with Mother in Blair County with her current relationships in place. The [c]ourt finds this status to be an advantage for Father and against relocation.

. . .

3. The feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties.

This is a factor against relocation. Based on the distance (approximately eight hours of driving), it is impractical to believe Father's present close relationship could be maintained.

In light of the foregoing, we find that this factor weighs against relocation.

. . .

7. Whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity.

- 16 -

This is very difficult as the fact is that the improvement in Mother's life should improve a portion of the daughter's life. However, the daughter would lose the proximity of Father and the emotional support balance that has been achieved over time would be fractured. The [c]ourt finds that [Child] enjoys greater benefits from this equal sharing. If relocation were allowed, there is no doubt that the father-daughter relationship would be negatively impacted, with Father not being able to enjoy the frequent personal contact that he currently has.

The [c]ourt finds there are two significant changes if the relocation is permitted. They are (1) Mother would have a better paying job that allows flexibility which would also improve daughter's life and (2) Mother would be residing with her family, including several relatives who her daughter knows well. However, these advantages are, in a sense, speculative in that these are Mother's best-case scenarios.

Contrastingly, what will be lost is the current stability of both parents having equal time with their child which has already been in place for her entire life and is proven to be very positive.

In light of the foregoing, we find this factor is equal to both parties.

8. The reasons and motivation of each party for seeking or opposing the relocation.

The [c]ourt believes that both parties go into this with honest motivations. Mother's motivation to move is appropriate and Father's opposition is also appropriate.

Therefore, the [c]ourt places no weight on this factor.

. . .

*CUSTODY FACTORS 23 Pa.C.S.[] § 5328*:

1. Which party is more likely to encourage and permit frequent and continuing contact between the child and another party.

This is a major concern because it would require Mother's continuing cooperation. If Mother were allowed to relocate, she would simply have to promote continuing contact with Father. Father's testimony was that Mother does not do this well now when the parties live very close to each other and, therefore, the substantially greater distance between Pennsylvania and

Tennessee would make this less likely. An example is Mother unilaterally changing health care insurance and taking [C]hild to Tennessee over the 2022 Memorial Day holiday without informing Father. The [c]ourt found Father's testimony in this regard more credible than Mother's.

This factor favors Father and against relocation.

. . .

4. The need for stability and continuity in the child's education, family life and community life.

Mother's relocation will challenge the current stability. Their daughter is three years old and the [c]ourt believes she is flexible and could adjust. However, the stability which she now seems to have found would certainly be diminished. The [c]ourt must note, however, that Father's recent move (although geographically still very close to Mother) did impact the stability as [C]hild was taken from a home where she lived exclusively with just Father to a different location where she now shares the home with Father, his paramour and the paramour's daughter. However, based on the current chaotic schedule the parties follow, this stability has room for improvement but there is no doubt that the current situation would be drastically altered by a move eight hundred miles away from a parent who now has that child fifty percent of the time. This child is doing well in her current environment.

This factor favors Father and against relocation.

. . .

12. Each parent's ability to care for the child or ability to make appropriate child-care arrangements.

Both parties would require assistance based on [C]hild's age. Both parties seem to have substantial contacts to assist them, with Mother having her entire family in Tennessee and Father having numerous relatives in Blair County. It should be noted if relocation is denied, Mother's familial contacts will not be available.

Trial Court Opinion, 8/18/22, at 7-8, 10-14, 16.

As to Section 5337(h)(1), the nature, quality, extent of involvement and duration of the child's relationship with the party proposing to relocate and with the non-relocating party, siblings and other significant persons in the child's life, Mother argues that the trial court erred in finding this factor in favor of Father. Mother's Brief at 48. She states that the court's indication that Child's "close relationship with both families will change and has, in fact, already changed" is incorrect, noting that the evidence suggests that Child continues to have a positive relationship with Mother's extended family, despite their relocation to Tennessee. *Id.* at 48-49. Mother challenges the court's finding that Father's family's relationship, based merely upon proximity, remained constant. *Id.* at 49. She further suggests that the court was incorrect with its reference to contacts and its bald determination that Father was more credible as it relates to contacts. *Id.* at 49-51.

As to Section 5337(h)(3), the feasibility of preserving the relationship between the non-relocating party and the child through suitable custody arrangements, considering the logistics and financial circumstances of the parties, Mother argues that the trial court erred in determining this factor weighed in favor of Father. *Id.* at 51. Mother maintains that the court merely considered travel time, failing to consider finances and logistics. *Id.* at 52. Mother states, "It is clear from the record that the [c]ourt failed to properly apply the mandates of this factor. The [c]ourt was to consider whether or not the relationship between the nonrelocating party and the child could be

preserved through suitable custody arrangements and it was to consider logistics and financial circumstances of the parties. All the [c]ourt considered was the travel time. This fell far short of what this statute requires." *Id.* She indicates that the court neglected her testimony as to her expected flexibility and proposed custodial arrangement with Father. *Id.* at 53-55.

As to Section 5337(h)(7), whether the relocation will enhance the general quality of life for the child, including, but not limited to, financial or emotional benefit or educational opportunity, Mother argues that the trial court improperly applied this factor. *Id.* at 56. Mother asserts that the court's finding that this factor favors Father is inconsistent with its finding that Section 5337(h)(6) favors Mother. *Id.* Mother states, "The [c]ourt made the finding that any advantages to [C]hild in Mother's move are, in a sense, speculative in that these are Mother's best care scenarios. The [c]ourt did not make such a statement when it analyzed the same benefits to Mother."[10] *Id.* at 56-57.

---

[10] In analyzing Section 5337(h)(6), whether the relocation will enhance the general quality of life for the party seeking the relocation, including, but not limited to, financial or emotional benefit or educational opportunity, the court stated:

> Based on Mother's testimony the relocation would assist her both financially and emotionally. A promotion to a manager in the retail atmosphere would provide her with greater income and her general quality of life would be improved being able to live close to her family.
>
> In light of the foregoing, we find that this factor weighs in favor of relocation.

Trial Court Opinion, 8/18/22, at 9-10.

- 20 -

She continues, "In its analysis of [Section 5337(h)(7)], the [c]ourt minimized the very positive impact upon the general quality of [C]hild's life if Mother is able to move to Tennessee. The [c]ourt failed to address the foregoing benefits to Mother that will also benefit [C]hild." *Id.* at 58. Mother further reasons that the court's focus on maintaining Father and Child's relationship is more appropriate to Section 5337(h)(3) and ignored her willingness to encourage and promote their relationship and provide Father custodial time. *Id.* at 59-61. Moreover, with this, Mother suggests that the court considered the impact on Father, not Child. *Id.* at 61.

As to Section 5337(h)(8), the reasons and motivation of each party for seeking or opposing the relocation, Mother argues that the court erred in failing to give weight to this factor. *Id.* at 62. Mother claims that this factor weighs in her favor and then points to her "compelling" reasons for seeking relocation to Tennessee, which are consistent with the prior intentions of the parties. *Id.* at 62-63. In so stating, she then notes that Father's intentions have shifted and that his focus is now on his perceived loss of time with Child. *Id.* at 63-64.

As to Section 5328(a)(1), which party is more likely to encourage and permit frequent and continuing contact between the child and another party, Mother argues that the trial court erred in finding this factor favored Father. *Id.* at 66. Mother notes that the court cites Mother's changing Child's health insurance and taking Child to Tennessee over Memorial Day in support of its

determination. *Id.* at 67. She states that, not only does the evidence not support this finding, but the issue of unilaterally placing child on her health insurance is unrelated. *Id.* at 67-68. Mother argues evidence supports that she encourages and permits Father's frequent contact with Child and has done so since separation. *Id.* at 68-71.

As to Section 5328(a)(4), the need for stability and continuity in the child's education, family life and community life, Mother argues that the trial court erred in finding this factor weighed in favor of Father. *Id.* at 72. Mother asserts "major changes in [Father's] life [] have affected [C]hild significantly since the first relocation hearing." *Id.* Mother references Father's move to the home of his new girlfriend in a different school district and his starting of a lawncare business. *Id.* at 72-75.

As to Section 5328(a)(12), each parent's ability to care for the child or ability to make appropriate child-care arrangements, Mother argues that the trial court erred in not finding that this factor favored Mother. *Id.* at 75. Mother contends that the court "misstated" this factor and incorrectly failed to analyze the parties' availability. *Id.* at 75-76. Mother contends that, rather than the parties' availability, the court "focused on people that are available to help each of the parties regarding childcare arrangements rather than how available each of the parties will be if the relocation is granted." *Id.* Mother then proceeds to emphasize her availability and flexibility if relocation to

Tennessee is granted. *Id.* at 76. She further suggests Father's lack of availability due to starting his lawncare business. *Id.* at 76-77.

As stated above, with regard to the custody and relocation factors, we have stated that the trial court is required to consider all such factors. *A.V.*, 87 A.3d at 822-23. Although the court is required to give "weighted consideration to those factors which affect the safety of the child" pursuant to 23 Pa.C.S.A. § 5328(a) and 23 Pa.C.S.A. § 5337(h), we have acknowledged that the amount of weight a court gives any one factor is almost entirely discretionary. *M.J.M.*, 63 A.3d 331 at 339. As we stated in *M.J.M.*,

> **It is within the trial court's purview as the finder of fact to determine which factors are most salient and critical in each particular case.** *See A.D.*[, 989 A.2d at 35-36] ("In reviewing a custody order ... our role does not include making independent factual determinations.... In addition, with regard to issues of credibility and weight of the evidence, we must defer to the presiding trial judge who viewed and assessed the witnesses first-hand."). Our decision here does not change that.

*M.J.M.*, 63 A.3d 331 at 339 (emphasis added). Further, while a parent's role in caring for a child may be considered in light of the statutory factors, "the primary caretaker doctrine, insofar as it required positive emphasis on the primary caretaker's status, is no longer viable." *Id.*

As we construe Mother's claims, we interpret the issues raised at their core as disputes to the trial court's findings of fact and determinations regarding credibility and weight of the evidence. Mother, in essence, questions the trial court's conclusions and assessments and seeks this Court to re-find facts, re-weigh evidence, and/or re-assess credibility to his view of

the evidence. This we cannot do. Under the aforementioned standard of review applicable in custody matters, the trial court's findings of fact and determinations regarding credibility and weight of the evidence are not disturbed absent an abuse of discretion. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527. As we stated in **King v. King**, 889 A.2d 630, 632 (Pa. Super. 2005), "It is not this Court's function to determine whether the trial court reached the 'right' decision; rather, we must consider whether, 'based on the evidence presented, given [sic] due deference to the trial court's weight and credibility determinations,' the trial court erred or abused its discretion. . . ." (quoting **Hanson v. Hanson**, 878 A.2d 127, 129 (Pa. Super. 2005)). After a thorough review of the record, we find no abuse of discretion. Further, to the extent Mother challenges the weight attributed to any factor by the trial court, we likewise find no abuse of discretion. As stated above, the amount of weight that a trial court gives to any one factor is almost entirely within its discretion. **See M.J.M.**, 63 A.3d at 339.

Instantly, the trial court analyzed and addressed each of the custody and relocation factors pursuant to Section 5328(a) and Section 5337(h). **See** Trial Court Opinion, 8/18/22, at 7-16. After careful review of the record, we determine that the trial court's findings and determinations regarding the custody and relocation factors set forth in Section 5328(a) and Section 5337(h) are supported by competent evidence in the record, and we will not disturb them. **See C.R.F.**, 45 A.3d at 443; **see also E.R.**, 129 A.3d at 527.

Lastly, with her sixth issue, Mother additionally contends that the trial court erred in imposing an improper legal burden. Mother's Brief at 64-66. Mother references the court's statement, made after a discussion of *Gruber v. Gruber*, 583 A.2d 434 (Pa. Super. 1990),[11] "In all instances where a custodial parent seeks to relocate and a noncustodial parent opposes the move, the burden is on the custodial parent to establish a significant improvement in the quality of life for that parent and child." Mother's Brief at 65 (referencing Trial Court Opinion, 8/18/22, at 5). Mother argues that Section 5337(h)(6) and (7), which address the quality of life of the relocating parent and the child, do not require significant improvement. She states,

> This statement is contrary to the [r]elocation [f]actors set forth in 23 Pa.C.S.[A.] § 5337(h). In particular, the specific factor that discusses the quality of life for the parent and child, appear in factors 6 and 7 where, in both instances, the statute does not require the relocating party to establish a significant improvement in the quality of life for that parent and child, but instead only requires the [c]ourt to determine whether the relocation will enhance the general quality of life for the moving party and the child.

*Id.* at 65-66.

This claim is without merit. Here, upon review, the court applied the relocation factors pursuant to Section 5337(h) and not *Gruber*. *See* Trial Court Opinion, 8/18/22, at 7-11. The court's analysis of Section 5337(h)(6)

---

[11] While *Gruber v. Gruber*, 583 A.2d 434, 439 (Pa. Super. 1990), required a substantial improvement to the lives of the relocating parent and child, that decision has been supplanted by the statutory factors of the Act. *See Commonwealth v. Childs*, 142 A.3d 823, 832 (Pa. 2016).

and (7) reveals a focus on the enhancement of the general quality of life, not a significant improvement, as suggested. ***See id.*** at 9-11 (stating, in part, as to Mother, "A promotion to a manager in the retail atmosphere would provide her with greater income and her general quality of life would be improved being able to live close to her family."). Moreover, the court properly noted the burden of proof as set forth in Section 5337(i)(1) ("The party proposing the relocation has the burden of establishing that the relocation will serve the best interest of the child as shown under the factors set forth in subsection (h)."). Trial Court Opinion, 8/18/22, at 3.

For the foregoing reasons, we affirm the trial court's order.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 5/16/2023