J-S19017-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA   :   IN THE SUPERIOR COURT OF
                                           :               PENNSYLVANIA
                                           :

            v.                         :

BENJAMIN CANE KIEFER          :

            Appellant        :      No. 3096 EDA 2024

Appeal from the PCRA Order Entered October 28, 2024
In the Court of Common Pleas of Wayne County
Criminal Division at No: CP-64-CR-0000199-2013

BEFORE: PANELLA, P.J.E., STABILE, J., and BECK, J.

MEMORANDUM BY STABILE, J.:             **FILED AUGUST 21, 2025**

Appellant, Benjamin Cane Kiefer, appeals from the October 28, 2024, order dismissing his petition filed pursuant to the Post Conviction Relief Act ("PCRA"), 42 Pa.C.S.A. §§ 9541-46. Upon review, we affirm.

A prior panel of this Court summarized the facts of Appellant's conviction as follows:

> After a night of drinking, fighting, and crashing a car, Appellant, Benjamin Kiefer, shot his brother, Kenneth, five times, resulting in Kenneth's death. At trial, [Appellant] conceded that he had shot Kenneth to death, but argued that he did so in self-defense.
>
>             * * * *
>
> At trial, the Commonwealth presented the testimony of [Appellant]'s and Kenneth's brother, Kevin. Kevin testified that after [Appellant] drove his car into a ditch, the brothers decamped and walked to [Appellant's] home. On the walk, [Appellant] repeatedly threatened to kill Kenneth.

[Appellant] walked into the house first. Kenneth paused before entering, and told Kevin that he was worried and did not want to go into the house. He asked Kevin to call the police "if anything happened." Kenneth and Kevin walked into the home approximately five to ten minutes after [Appellant] did.

Kenneth and [Appellant] began arguing again almost immediately. [Appellant] repeatedly requested that Kenneth let him punch Kenneth in the face, because "he was mad that he didn't win the fight, and Kenneth said no."

Eventually, the argument ended. Kenneth walked to the living room, while [Appellant] went to his bedroom. Kevin then saw [Appellant] walk into the living room, holding a gun behind his back. As [Appellant] approached Kenneth, Kenneth stood up and put his hands in the air.

[Appellant] shot Kenneth five times. After the first or second shot, Kenneth fell to the ground, screaming. [Appellant] then told Kevin that he had to tell the police that it had been self-defense.

*Commonwealth v. Kiefer*, 2925 EDA 2016, 2017 WL 3976371 at *1-2 (Pa. Super. filed September 11, 2017) (unpublished memorandum).

Appellant testified on his behalf and claimed self-defense. He said that Kenneth kicked open his door, yelling and screaming at Appellant. Appellant said Kenneth punched him in the head several times. In response, Appellant fired a shot off to the side, presumably to scare Kenneth. Kenneth then tried to put Appellant into a guillotine chokehold (a wrestling move) so Appellant, in fear for his life, fired several shots off in succession. Appellant did not realize Kenneth was shot at first and when he did, started CPR. Appellant denied Kevin was in the home and witnessed the shooting.

A jury found Appellant guilty of third-degree murder, and he was sentenced to an aggregate fifteen to thirty years' imprisonment. Appellant did not file a direct appeal.

On December 17, 2015, Appellant filed a *pro se* PCRA petition. Counsel was appointed who filed an amended petition seeking reinstatement of Appellant's direct appeal rights. His direct appeal rights were reinstated on August 10, 2016. Appellant filed an appeal, and this Court affirmed the judgment of sentence. *See id.*

Appellant filed another *pro se* PCRA petition on August 21, 2018, and requested appointment of PCRA counsel. His petition raised three claims: (1) trial counsel was ineffective because they did not provide Appellant with requested information or file motions on his behalf; (2) trial counsel was ineffective because they did not file a direct appeal or PCRA petition; and (3) the trial court failed to rule on a post-sentence motion for modification. The PCRA court did not appoint counsel, and ultimately dismissed the petition on February 6, 2019.

On March 4, 2019, Appellant filed a *pro se* notice of appeal. This Court directed the PCRA court to appoint counsel, and on August 21, 2019, Oressa P. Campbell, Esquire, was appointed. The record indicates that counsel requested transcripts, but did not file any supplemental pleadings. On appeal, this Court reversed the dismissal, finding that Appellant was entitled to appointment of PCRA counsel since it was his first PCRA petition following reinstatement of his direct appeal rights. *See Commonwealth v. Kiefer*,

637 EDA 2019, 2019 WL 5858073, unpublished memorandum (Pa. Super. filed November 8, 2019).

There was no docket activity following remand from this Court until May 19, 2023, when Appellant filed correspondence directed to Attorney Campbell requesting to know the status of his appeal. After a few status conferences, an amended PCRA petition encompassing all Appellant's issues was filed on May 7, 2024. Following an evidentiary hearing, Appellant's amended petition was dismissed on October 28, 2024.

This appeal followed. Both Appellant and the PCRA have complied with Pa.R.A.P. 1925.

Appellant raises the following issues for our review:

1. Did the [PCRA] court err in determining that trial counsel did not render ineffective assistance of counsel[?]

2. Did the [PCRA] court err in determining that [Appellant's] claims were not meritful[?]

3. Did the [PCRA] court err in determining that the appellate counsel rendered effective counsel and had no conflict of interest[?]

4. Did the [PCRA] court err in determining [Appellant] should be denied Post-Conviction Relief[?]

Appellant's Brief, at 4.

Appellant's claims are interrelated and will be addressed as such. We review an order denying a petition for collateral relief to determine whether the PCRA court's decision is supported by the evidence of record and free of legal error. *See e.g., Commonwealth v. Albrecht*, 994 A.2d 1091, 1093

(Pa. 2010). "The PCRA court's findings will not be disturbed unless there is no support for the findings in the certified record." ***Commonwealth v. Hernandez***, 79 A.3d 649, 651 (Pa. Super. 2013). "The scope of our review is limited to the findings of the PCRA court and the evidence of record, which we view in the light most favorable to the party who prevailed before that court." ***Commonwealth v. Small***, 238 A.3d 1267, 1280 (Pa. 2020) (internal citations omitted).

Appellant raised three claims of trial counsel ineffectiveness: (1) failing to raise and preserve the castle doctrine defense; (2) failing to object to evidence obtained without a warrant; and (3) failing to adequately cross-examine the Pennsylvania State Police at trial. He also asserts two claims of appellate counsel ineffectiveness: (1) failing to disclose a potential conflict of interest and  (2) failing to preserve issues for direct review, namely the castle doctrine defense.

In Pennsylvania, counsel is presumed to have rendered effective assistance. ***Commonwealth v. Orlando***, 156 A.3d 1274, 1281 (Pa. Super. 2017). To overcome this presumption, a petitioner must plead and prove by a preponderance of the evidence that: (1) the underlying claim has arguable merit; (2) counsel had no reasonable strategic basis for his or her action or inaction; and (3) the petitioner suffered prejudice because of counsel's action or inaction. ***Id.*** Our Supreme Court has explained that:

> A chosen strategy will not be found to have lacked a reasonable basis unless it is proven that an alternative not chosen offered a

potential for success substantially greater than the course actually pursued.

Prejudice in the context of ineffective assistance of counsel means demonstrating that there is a reasonable probability, but for counsel's error, the outcome of the proceedings would have been different.

*Commonwealth v. Cox*, 983 A.2d 666, 678 (Pa. 2009) (citations omitted). If a petitioner fails to satisfy any one of the three prongs, the claim fails. *Orlando*, 156 A.3d at 1281. "Counsel will not be found ineffective for failing to raise a meritless claim." *Commonwealth v. Brown*, 196 A.3d 130, 151 (Pa. 2018).

As noted, the PCRA court denied Appellant's petition and found that the testimony at trial, namely Kevin's testimony, was contrary to Appellant acting in self-defense. *See* PCRA Court Opinion, 10/28/24, at 6. While we agree with the PCRA court that Appellant is not entitled to relief, we do so on a different basis. *See Commonwealth v. Ani*, 293 A.3d 704, 729 (Pa. Super. 2023) ("As an appellate court, we may affirm on any legal basis supported by the certified record.").

Appellant first claims trial counsel was ineffective by failing to raise and preserve the castle doctrine defense. This claim is without arguable merit. The record indicates that trial counsel requested, and the court provided, a self-defense jury instruction. Appellant contends, however, that the instruction was inadequate because the trial court instructed the jury that Appellant had a duty to retreat when the castle doctrine does not have such a duty inside of one's home. *See* Appellant's Brief, at 19.

- 6 -

The castle doctrine is a "specialized component of self-defense, which recognizes that a person has no duty to retreat from his or her home before using deadly force as a means of self-defense." ***Commonwealth v. Childs***, 142 A.3d 823, 824 n.1 (Pa. 2016). "The trial court has broad discretion in phrasing its instructions, and may choose its own wording so long as the law is clearly, adequately, and accurately presented to the jury for its consideration." ***Commonwealth v. Sepulveda***, 55 A.3d 1108, 1141 (Pa. 2012). The Pennsylvania Suggested Standard Jury Instruction for the castle doctrine provides, in pertinent part:

> That the defendant had a duty to retreat instead of using deadly force and did not fulfill that duty. A duty to retreat arises where the defendant knows that [he] [she] could avoid the necessity of using deadly force with complete safety by retreating.
>
> However, there are certain exceptions to this duty to retreat.
>
> (i) **A defendant is not obligated to retreat from his or her dwelling unless he or she was the initial aggressor**.

Pa. SSJI (Crim) § 9.501(A) Use of Force/Deadly Force in Self-Defense (Castle Doctrine) (emphasis added). The trial court provided the following self-defense instruction:

> [Appellant] has raised the issue of whether or not he acted in self-defense when he shot Kenneth Walter Keifer. Self-defense is called 'justification' in the law of Pennsylvania. If [Appellant]'s actions were 'justified,' you cannot find him guilty beyond a reasonable doubt. The issue having been raised, it is the Commonwealth's burden to prove beyond a reasonable doubt that [Appellant] did not act in justifiable self-defense.

Now, to prove that deadly force was not justifiable in this case, the Commonwealth must prove one of the following elements beyond a reasonable doubt:

First, that [Appellant] did not reasonably believe that he was in immediate danger or death or serious bodily injury from Kenneth Walter Keifer at the time he used the force and therefore his belief that it was necessary for him to use deadly force to protect himself was unreasonable. . . .

. . . [S]econd, [Appellant] knew he could avoid the necessity of using deadly force with complete safety by retreating, but that he failed to do so. However, **[Appellant] is not obligated to retreat from his own dwelling[,] . . . home or place of lodging, unless he was the initial aggressor in the incident.**

N.T. Trial, 9/18/24, at 17-18 (emphasis added) (cleaned up).

The record reflects trial counsel requested the court instruct the jury on the following points of charge relative to self-defense: (1) justification: use of force/deadly force in defense of others, Pa. SSJI (Crim) § 9.502; (2) justification: use of force/deadly force in self-defense, Pa. SSJI (Crim) § 9.501; (3) rules for justification when deadly force was used in self-defense or defense of others, Pa. SSJI (Crim) §§ 9.501, 9.502. *See* Points for Charge, 9/9/14, at 5-7. Phrasing of the jury instructions is within the trial court's discretion. Since the trial court clearly, adequately and accurately instructed the jury on the castle doctrine, including that Appellant did not have a duty to retreat while inside his own home, trial counsel had no reason to object to the jury instructions. Thus, Appellant's ineffectiveness claim is without arguable merit. Moreover, trial counsel cannot be found ineffective for failing to raise a meritless claim on appeal.

To the extent Appellant contends trial counsel was ineffective because counsel failed to call witnesses to support his self-defense claim, that also is without arguable merit. Appellant testified on his own behalf. According to his testimony, the only other person present for the shooting was his girlfriend, Ralissa Gibson. Gibson was called as a defense witness and testified that she was in the bedroom and did not witness the shooting. N.T. Trial, 9/16/14, at 184-85. Thus, we cannot find counsel ineffective as they called the only witness Appellant claimed could support his self-defense claim.[1]

Appellant's second ineffectiveness claim is that trial counsel failed to object to evidence obtained without a warrant. During the PCRA hearing, Appellant clarified that he believed there were eight shell casings at the scene, but an unspecified report indicated only five casings were collected. N.T. PCRA Hearing, 10/4/24, at 14-15. This, Appellant claims, proves that the Pennsylvania State Police removed three casings from the scene before the warrant was executed. *Id.* Relatedly, Appellant contends that trial counsel entered stipulations without his consent. *Id.* at 16. One such stipulation noted that seven spent casings were collected from the scene, all of which were fired from the same gun. *See* Second Stipulation of Facts, 9/11/14.

These claims are vague and even with the benefit of an evidentiary hearing, Appellant failed to explain how the alleged discrepancies in the

_____

[1] Appellant did not identify any additional witnesses who could support his self-defense claim and generally stated that he provided the information to trial counsel. N.T. PCRA Hearing, 10/4/24, at 9.

preliminary hearing transcript and the stipulation regarding the shell casings found at the scene were prejudicial. Since Appellant did not satisfy the prejudice prong, this claim fails, and no relief is due.[2] **Orlando**, **supra**.

In Appellant's third claim, he asserts that trial counsel was ineffective by not adequately cross-examining Pennsylvania State Troopers. However, he does not state which troopers were not properly cross-examined, nor which portions of their cross-examination were inadequate. Therefore, this issue is waived. **See Commonwealth v. Gilbert**, 269 A.3d 601, 612 (Pa. Super. 2022) ("An appellant's failure to properly develop an argument with citations to the relevant portions of the record will result in the waiver of his appellate claims.").

Regarding appellate counsel, Appellant argues counsel was ineffective because he failed to disclose a conflict of interest and failed to preserve issues for direct review, namely the castle doctrine defense. Appellate counsel was appointed to represent Appellant after filing a *pro se* PCRA petition seeking reinstatement of his direct appeal rights. His direct appeal rights were reinstated, and appellate counsel filed a direct appeal. Counsel ultimately filed

_____

[2] To the extent Appellant argues that trial counsel was ineffective by not allowing Appellant to review the forensic and scientific reports before stipulating to the admissibility, no relief is due. Appellant failed to call trial counsel as a witness during the PCRA hearing to determine whether counsel had a reasonable basis to stipulate to such reports.

an **Anders**[3] brief asserting there were no non-frivolous issues to be raised on appeal, and this Court affirmed Appellant's judgment of sentence.

Appellant contends that appellate counsel "concurrently represented" Appellant, on his direct appeal, and Appellant's brother and Commonwealth witness, Kevin Keifer, on a summary offense. Appellant's Brief, at 25. Kevin was a witness against Appellant, and Appellant was allegedly the victim of Kevin's summary charge. **Id.** He claims this was a conflict of interest which caused appellate counsel to file an **Anders** brief, thereby "abandoning" him instead of preserving meritorious issues. **Id.** at 26.

This argument is factually inaccurate. Appellate counsel represented Kevin on a summary criminal mischief charge. Although the docket does not indicate when counsel entered his appearance, Kevin pleaded guilty and was sentenced on October 16, 2014, and did not appeal, effectively ending counsel's representation. **See Commonwealth v. Tharp**, 101 A.3d 736, 754 (Pa. 2014) ("Counsel's representation of a client is not perpetual through the expiration of the client's entire sentence."). Appellant's trial was held from September 15-18, 2014, and he was sentenced on December 4, 2014.

Appellate counsel was not appointed to represent Appellant until September 20, 2016, almost two years after his representation of Kevin ceased. Thus, Appellant's argument that counsel represented both him and

---

[3] **Anders v. California**, 386 U.S. 738 (1967).

Kevin "concurrently" is not supported by the record. This, however, does not end our analysis.

A defendant cannot prevail on a conflict of interest claim absent a showing of actual prejudice. *Commonwealth v. Spotz*, 896 A.2d 1191, 1231 (Pa. 2006). "[W]hile it is true that prejudice is presumed when counsel is burdened by an actual conflict of interest, this is only if the defendant demonstrates that counsel actively represented conflicting interests and that an actual conflict of interest adversely affected his lawyer's performance." *Id.* at 1231-32 (citations and quotation marks omitted).

Here, Appellant has failed to demonstrate that appellate counsel "actively represented conflicting interests." *Id.* This was not a circumstance involving dual representation by a single attorney. Rather, appellate counsel's representation of Kevin terminated before he was appointed to represent Appellant. "[W]here, as here, the record clearly demonstrates that counsel did not actively represent conflicting interests, a claim based on the appearance of a conflict of interest lacks merit." *Id.* at 1232 (citation omitted).

Finally, Appellant presents a layered claim of appellate counsel ineffectiveness. Specifically, he argues that appellate counsel failed to preserve a challenge to the jury instructions regarding the castle doctrine defense. As we previously found that the trial court properly instructed the jury on self-defense and the castle doctrine, and trial counsel was not

ineffective for failing to raise a frivolous issue, we similarly conclude that appellate counsel was not ineffective. Accordingly, no relief is due.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 8/21/2025